**Rodney J. WARTHEN, Appellant–Defendant,**

**v.**

**STATE of Indiana, Appellee–Plaintiff.**

**No. 60A01–9108–CR–256.**

Court of Appeals of Indiana, First District.

March 18, 1992.

---

Richard W. Lorenz, Hickam and Hickam, Spencer, for appellant-defendant.

Linley E. Pearson, Atty. Gen. of Indiana and Preston W. Black, Deputy Atty. Gen., Office of Atty. Gen., Indianapolis, for appellee-plaintiff.

BAKER, Judge.

Defendant-appellant Rodney J. Warthen appeals his conviction for operating a vehicle while intoxicated, a Class A misdemeanor.[1] He raises two issues for our review, which we restate as:

I. Whether the trial court erred when it gave Final Jury Instruction No. 8 regarding the rebuttable presumption that the result of Warthen's subsequent blood alcohol test related back to the time he operated the vehicle.

II. Whether Final Jury Instruction No. 8 impermissibly failed to advise the jury that the presumption was both permissive and rebuttable.

We reverse and remand for a new trial.

### FACTS

Warthen was involved in a single vehicle accident sometime during the early morning hours of July 1, 1990. The van he was driving left the roadway on U.S. 231 approximately one mile north of Carp,

Indiana, and landed in a ditch 50 to 75 feet away. The Owen County Sheriff's Department received a call from someone in the area who reported that he kept hearing a horn honk on and off. At 4:48 a.m., Deputy Michael Herrington was dispatched to investigate and arrived at the scene shortly thereafter. A man flagged him down and directed him to the van which was down an embankment. When Deputy Herrington approached the van, he noticed the van's motor and windshield wipers were running and its rear wheel was turning. Warthen, who was alone, was trapped in the driver's side and was yelling for help. The deputy noted that Warthen had a strong odor of alcoholic beverages about him.

Deputy Herrington radioed for assistance and emergency personnel successfully freed Warthen from the van. They transported him to Bloomington Hospital where a sample of his blood was drawn at 7:14 a.m. The sample revealed a blood alcohol content (BAC) of .116%. On September 12, 1990, Warthen was charged by information with operating a motor vehicle while intoxicated. A jury found him guilty of the charge on January 28, 1991, and the court imposed a one year suspended sentence and suspended Warthen's Indiana driver's license for 90 days.

### DISCUSSION AND DECISION

#### I

##### (A) *Erroneous Instruction*

Warthen contends the trial court erred when it gave Final Jury Instruction No. 8. He argues it was an incorrect statement of the law and it was unsupported by the evidence. The giving of a jury instruction lies within the discretion of the trial court. *Crabtree v. State* (1990), Ind.App., 547 N.E.2d 286, 292, *trans. denied.* This court will review the decision only for an abuse of discretion. *Id.* The test of whether a tendered instruction is proper is whether there is evidence to support giving the instruction, whether the substance of the tendered instruction is covered by other instructions, and whether the instruction is

1. IND.CODE 9–11–2–2 [now 9–30–5–2]

a proper statement of the law. *Bieghler v. State* (1985), Ind., 481 N.E.2d 78, 96, *cert. denied,* (1986), 475 U.S. 1031, 106 S.Ct. 1241, 89 L.Ed.2d 349.

■ Final Jury Instruction No. 8 provided, in relevant part:

A law enforcement officer who has probable cause to believe that a person has commited [sic] an offense of (operating a vehicle while intoxicated) shall offer the person the opportunity to submit to a chemical test.... A law enforcement officer may offer a person more than one chemical test.... **However, all tests must be administered within three (3) hours after the officer had probable cause to believe the person committed an offense (of operating a vehicle while intoxicated)....**

Under Indiana law, if the evidence in this case establishes that:

(1) A chemical test was performed on a test sample taken from the defendant within the period of time allowed for testing under the Indiana statutes regarding the offense of operating while intoxicated ... and

(2) The defendant had at least ten hundredths percent (.10%) by weight of alcohol in his blood at the time the test sample was taken;

Then you as the trier of fact shall presume that the defendant had at least ten hundredths (.10%) by weight of alcohol in his blood at the time he operated the vehicle. However, this presumption is rebuttable, and accordingly, after considering all of the evidence, you may find that this initial presumption is rebutted by other evidence.

*Record* at 60–61 (emphasis added). At issue here is the highlighted language which mandates the presumption applies when the BAC test is conducted within three hours after the officer develops probable cause. This instruction follows the statutory language set out in IND.CODE 9–30–6–15 and IND.CODE 9–30–6–2.[2] Our supreme court has stated that it is generally proper to give instructions in the exact language of the statute when the statutory language is not unconstitutionally vague or misleading. *Bieghler, supra* at 95. We find it was error for the trial court to give the above instruction in this case, however, because the instruction was an incomplete statement of the law under the facts here.

When operation of the vehicle and formation of probable cause occur in close proximity to one another, and when the BAC test is conducted within three hours after both events, the case law has clearly held the three-hour time period is satisfied. *See, e.g., Hall v. State* (1990), Ind.App., 560 N.E.2d 561 (police stopped erratic driver at 1:30 a.m., and after noting strong smell of alcohol conducted BAC test at 1:55 a.m.); *Chilcutt v. State* (1989), Ind.App., 544 N.E.2d 856, *trans. denied* (officer dispatched to scene of accident found driver lying next to overturned vehicle and BAC test was administered "within the specified period of time"); *Livingston v. State* (1989), Ind.App., 537 N.E.2d 75 (BAC test conducted 29 minutes after officer stopped defendant for speeding and driving erratically). When an officer does not develop probable cause in close proximity to when the driver operated the vehicle, however, and when the BAC test is conducted within three hours after the officer developed probable cause but not within three hours

2. IND.CODE 9–30–6–15 provides, in relevant part:

(b) If, in a prosecution for an offense under IC 9–30–5, evidence establishes that:
(1) a chemical test was performed on a test sample taken from the person charged with the offense within the period of time allowed for testing under section 2 of this chapter; and
(2) the person charged with the offense had at least ten-hundredths percent (0.10%) by weight of alcohol in the person's blood at the time the test sample was taken; the trier of

fact shall presume that the person charged with the offense had at least ten-hundredths percent (0.10%) by weight of alcohol in the person's blood at the time the person operated the vehicle. However, this presumption is rebuttable.

Referenced above as "section 2," IND.CODE 9–30–6–2 provides, in relevant part: (c) A test administered under this chapter must be administered within three (3) hours after the law enforcement officer had probable cause to believe the person committed an offense under IC 9–30–5.

after the driver operated the vehicle, the question arises whether the three-hour time period is satisfied.

This court recently addressed this issue in a case of first impression in *Mordacq v. State* (1992), Ind.App., 585 N.E.2d 22. In that case, Police Officer Rozzi noticed a car parked on 7th Street in Logansport, Indiana, with its engine running. When the officer passed the car again an hour later, the engine was still running and the car had not moved. It was then 3:30 a.m., and the officer decided to investigate. He found Mordacq asleep in the driver's seat. When she awoke, he smelled alcohol on her breath. Mordacq told Officer Rozzi that she had driven to 7th Street at least two hours earlier, but she wasn't sure of the time. Officer Rozzi transported her to the county jail, and at 3:55 a.m. the BAC test registered .10%. Mordacq was convicted in a bench trial under IND.CODE 9–11–2–1 [now IND.CODE 9–30–5–1] of operating a vehicle with at least .10% blood alcohol content.

In her appeal, Mordacq argued the evidence was insufficient to sustain the presumption that the result of the BAC test related back to the time of the offense. This court agreed. Although IND.CODE 9–30–6–2(c) states that "[a] test administered under this chapter must be administered within three (3) hours after the law enforcement officer had probable cause to believe the person committed an offense," Judge Barteau explained that the three-hour limit "begins not from the moment an officer ideates probable cause, but rather from the moment at which the vehicle was operated in violation of I.C. 9–30–5." *Id.* at 26. Otherwise, "in a case where the officer did not observe the defendant operating the vehicle, the statutes could be read to impose no limit on the relation back of the test, provided the test was performed within three hours of the time an officer investigated the defendant." *Id.* As this court expressed in *Mordacq*, this would lead to absurd and illogical results.

In this case, the jury was instructed that Warthen's BAC test presumptively related back to the time he operated his van, pro-

vided the test was conducted within three hours after the officer had probable cause to believe he operated the vehicle while intoxicated. The evidence was in dispute, however, as to when Warthen operated the van.

Deputy Herrington testified that he did not know when Warthen's accident occurred, but when he arrived at the scene he noted that the van's motor and windshield wipers were running and the tire was spinning. The State argues this was evidence Deputy Herrington reached Warthen's van and developed probable cause not long after the accident occurred. Deputy Herrington also testified, however, that Warthen's legs were jammed in the dash so badly he could not get his hand on the key to turn off the motor. Even the emergency medical technicians (EMTs) could not reach the key nor could they cut the battery connections. In regard to the spinning wheel, Deputy Herrington recalled that someone "had to crawl underneath and disconnect something to get that tire to stop." *Record* at 204. It was Warthen's testimony that the accident occurred around midnight and he was trapped in his vehicle until Deputy Herrington arrived, which was shortly after 4:48 a.m. The BAC test was not conducted until 7:14 a.m.

In light of this evidence, the jury could have found that Warthen's operation and the officer's development of probable cause did not occur in close proximity to one another. Accordingly, the jury should have been instructed that the presumption under IND.CODE 9–30–6–15 related back to the time of operation only if the jury found the BAC test was conducted within three hours after Warthen operated the vehicle. *See id.*

### (B) *Harmless Error Review*

■ Our review is not complete, however. Even if it was error to give Final Jury Instruction No. 8, Warthen must still show he was prejudiced. *See Hurt v. State* (1990), Ind.App., 553 N.E.2d 1243, 1249. Reversal is not mandated if the evidence clearly sustains the conviction and the jury could not have found otherwise. *Id.*

Although there is no direct evidence Warthen was impaired when he operated the motor vehicle, proof of operating while intoxicated may be made by circumstantial evidence. *Smith v. State* (1989), Ind., 547 N.E.2d 845, 846. The circumstantial evidence in this case, however, does not clearly sustain the conviction. There were no witnesses who saw Warthen's accident or who observed his driving before the accident. Warthen testified that he was very tired and fell asleep behind the wheel. Deputy Herrington testified that there were no skid marks on the highway or any indications of braking, and there was no evidence that Warthen had tried to avoid obstacles. Warthen also testified that after having the accident at around midnight or a little later, he was trapped and in great pain when he began drinking from a bottle of whiskey that was under the driver's seat.

Just because Warthen says it is so does not make it so, and we express no opinion as to his credibility. Nevertheless, because the evidence does not clearly sustain the conviction that Warthen was intoxicated when he operated his van, we cannot say the instruction error was harmless. *See Hurt, supra.* This error warrants a new trial. *See Street v. State* (1991), Ind., 567 N.E.2d 102, 105.

## II

*Permissive And Rebuttable Presumption*

■ Warthen also argues that Final Jury Instruction No. 8 impermissibly failed to advise the jury the presumption the BAC test related back to the time he operated the vehicle was both permissive and rebuttable. We address this issue because of the possibility it will arise again in Warthen's second trial.

This court has rejected jury instructions that followed the language of IND.CODE 9–30–6–15 but failed to advise the jury it was free to accept or reject the presumption that the defendant's subsequent BAC test results related back to the time of vehicle operation. *See, e.g., Sturgeon v. State* (1991), Ind.App., 575 N.E.2d 679, 681 (instruction was erroneous because it was both conclusive and mandatory); *Hall, supra* at 563 (jury not instructed it could reject presumed fact even if defendant did not come forward with rebuttal evidence).

In this case, Final Jury Instruction No. 8 concluded with the phrase, "However, this presumption is rebuttable, and accordingly, after considering all of the evidence, you may find that this initial presumption is rebutted by other evidence." *Record* at 61. This phrase sufficiently informed the jury the presumption was rebuttable, but it did not inform the jury it was free to accept or reject the presumption even if the defendant did not come forward with rebuttal evidence. *See Hall, supra.* The instruction was accordingly erroneous.

Our decision today does not affect earlier decisions of this court in which we recognized that post-accident consumption of alcohol is an affirmative defense, and it is permissible to place the burden on the defendant to establish the defense. *See, e.g., Chilcutt, supra* at 858. This court has held that the defendant should have the burden of establishing post-accident alcohol consumption because he is in the best position of knowing how much alcohol he consumed after operating the vehicle. *Id.*

The judgment of the trial court is reversed and the cause is remanded for a new trial.

RATLIFF, C.J., and RUCKER, J., concur.