**Michael ALEXANDER, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 71A04–1006–CR–372.

Court of Appeals of Indiana.

April 21, 2011.

Philip R. Skodinski, South Bend, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Tamara Weaver, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

MAY, Judge.

 Michael Alexander appeals his conviction of Class C felony operating a motor vehicle after a lifetime suspension of driving privileges.[1] He asserts the police violated his constitutional rights by con-

---

1. Ind.Code § 9–30–10–17.

2. Alexander argues police lacked *probable cause* to justify the stop. However, probable cause is not required to conduct a traffic stop: "police may stop an individual for investigato-

ducting the initial traffic stop[2] that led to his arrest. We affirm.

## FACTS AND PROCEDURAL HISTORY

After receiving a complaint about Alexander from the management of an apartment complex that had banned him, Mishawaka police checked Alexander's driving record. They found Alexander had a lifetime driving suspension and obtained his picture. Police saw Alexander driving, pulled him over, and arrested him. Alexander was convicted of Class C felony operating a motor vehicle after lifetime suspension of driving privileges.

## DISCUSSION AND DECISION

 Alexander contends the police violated his Fourth Amendment rights by obtaining his driving record and picture from Bureau of Motor Vehicles (BMV) records without probable cause. The Fourth Amendment provides, in part: "The right of people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures, shall not be violated[.]" Although there are exceptions, the general rule is "[t]he Fourth Amendment requires the police to obtain a search warrant ... prior to undertaking a search of either a person or private property." *Sellmer v. State*, 842 N.E.2d 358, 362 (Ind.2006). Fourth Amendment protections apply when (1) a person has an actual subjective expectation of privacy and (2) the expectation is one society is prepared to recognize as reasonable. *Holder v. State*, 847 N.E.2d 930, 935–36 (Ind.2006) (citing *Katz v. U.S.*, 389 U.S. 347, 361, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967)).

ry purposes if, based on specific, articulable facts, the officer has a *reasonable suspicion* that criminal activity is afoot." *Denton v. State*, 805 N.E.2d 852, 855 (Ind.Ct.App.2004) (emphasis added), *trans. denied.*

■ There is no reasonable expectation of privacy in BMV records. Motor vehicle records may be inspected "if the person requesting the information provides proof of identity and represents that the use of the personal information will be strictly limited to ... use by a government agency, including a court or law enforcement agency, in carrying out its functions." Ind.Code § 9–14–3.5–10. We have accordingly held that there is "no reasonable expectation of privacy from law enforcement officers in ... BMV records." *Maloney v. State*, 872 N.E.2d 647, 652 (Ind.Ct. App.2007) (involving a police search based on license plate numbers). As the legislature has authorized police to obtain vehicle licensing information for law enforcement purposes, drivers' privacy rights are not implicated when law enforcement elects to do so. *See Wilkinson v. State*, 743 N.E.2d 1267, 1270–71 (Ind.Ct.App.2001) (involving a police search based on license plate numbers), *trans. denied, disapproved on other grounds by Armfield v. State*, 918 N.E.2d 316, 322 (Ind.2009).

■■ Although *Maloney* and *Wilkinson* addressed the use of vehicle license plate numbers to access BMV information, police can obtain the same information by searching based on a driver's name. The statute does not require the requesting person to use a particular record identifier to access the information; it requires only that the information be used to carry out law enforcement functions. *See* Ind.Code § 9–14–3.5–10. Therefore, just as with a BMV query based on license plate numbers, a query of BMV records based on a person's name is not a search for Fourth Amendment purposes. *See Maloney*, 872 N.E.2d at 652. Because it was not a search governed by the Fourth Amendment, police needed neither reasonable suspicion nor probable cause to obtain Alexander's BMV records.[3] *See Hoop v. State*, 909 N.E.2d 463, 468 (Ind.Ct.App. 2009) (because officer brought dog to front door of house using same walkway that would be used by any visitor, the dog's "sniff did not implicate the Fourth Amendment"), *trans. denied*.

■ When police checked Alexander's name on their computer,[4] they found Alexander was an habitual traffic violator with a lifetime driving suspension and had outstanding warrants from LaPorte County. One officer obtained a photo of Alexander and, while patrolling near Parkview Apartments, saw Alexander driving. These facts demonstrate the officer had reasonable suspicion to stop the vehicle. *See United States v. Sokolow*, 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989) (holding "the police can stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal

3. Alexander contends the police should not have looked up his driving status, obtained his photo, and discovered his outstanding warrants because the "original information" was from an anonymous tip that was not properly corroborated. (Appellant's Br. at 4.) *See Sellmer*, 842 N.E.2d at 362 (holding an anonymous tip cannot create probable cause unless it is "corroborated by the police," demonstrates "intimate familiarity with the suspect's affairs," and is "able to predict future behavior"). However, when the police action at issue is not a "search" for Fourth Amendment purposes, the action does not need to be based on facts that meet the criteria required for conducting a Fourth Amendment "search." Thus, the source of the information police used to query the BMV database is irrelevant.

4. Two officers worked in concert to obtain this information. One officer returned to dispatch to obtain a photo of Alexander because the technology in the patrol car did not allow access to BMV photographs. In this regard, the collective knowledge of police can be admitted through one of its members. *State v. Hornick*, 540 N.E.2d 1256, 1258 (Ind.Ct.App. 1989).

activity 'may be afoot,' even if the officer lacks probable cause"); *Armfield,* 918 N.E.2d at 319; *Bannister v. State,* 904 N.E.2d 1254, 1255 (Ind.2009). *See also Williams v. State,* 253 Ind. 316, 253 N.E.2d 242, 249 (1969) (holding Williams' arrest was lawful because "appellants were observed to be in the act of committing a crime in the eyes of the officers").

## CONCLUSION

As police inspection of BMV records does not implicate the Fourth Amendment, the police stop of Alexander based on the information in his driver's record was permissible. We therefore affirm the judgment of the trial court.

Affirmed.

FRIEDLANDER, J., and MATHIAS, J., concur.